NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAREN WEISS, | Civil Action No.: 12-6834 |
| Plaintiff, | |
| v. | **OPINION** |
| RUTGERS UNIVERSITY, ET AL., | |
| Defendants. | |

**CECCHI, District Judge.**

Before the Court is the motion to dismiss of Defendants Rutgers University, Rutgers Graduate School of Applied and Professional Psychology, Douglass Developmental Disabilities Center, Susan Forman, Sandra Harris, Robert La Rue, Stanley Messer, and Kimberly Sloman (the "Rutgers Defendants"). (ECF No. 44). The Court decides the Motion without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the Court will grant in part and deny in part the Motion.

**I.     BACKGROUND**

This case arises out of Plaintiff's enrollment and subsequent dismissal from the Rutgers Graduate School of Applied and Professional Psychology ("Rutgers GSAPP"). (Compl.[2] ¶¶ 21-

---

[1] The Court considers any new arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

[2] First Amended Complaint, ECF No. 21.

22, 60-81). The Defendants are all affiliated with Rutgers GSAPP, and interacted with Plaintiff during her enrollment as a student in the school. Plaintiff claims that Defendants discriminated against her because of her learning disability, and that this discrimination led to her being dismissed from the school. Defendants contend that the decision to dismiss Plaintiff was an academic decision, based on Plaintiff's poor academic performance. (Def. Br. 1).

The following facts, taken from the Amended Complaint (ECF No. 21), are taken as true for the purposes of this Motion. Plaintiff has a Cognitive/Visuospatial Processing Disorder and a Mixed Learning Disability. (Compl. ¶ 17). Plaintiff claims that these disabilities limit her ability to learn, read, concentrate, think, and communicate. Dr. Cohen, who evaluated Plaintiff in 2003 and 2008 noted that Plaintiff had "significant deficits in the processing of visual-perceptual information, specifically related to numerical analysis and three-dimensional position of objects in space," and significant delays "for understanding directions, reading fluency and math fluency." (Id. ¶ 18).

Plaintiff is a high-school and college graduate who was admitted to Rutgers GSAPP without disclosing her alleged disability. (Id. ¶¶ 20-22). She matriculated to Rutgers GSAPP in 2008. (Id. ¶ 22). In order to obtain a quiet room and additional time for her exams, Plaintiff disclosed her disabilities to the school and certain professors during her first semester. (Id. ¶¶ 24-25). Plaintiff received grades of "A"s except for one "B+" her first semester. (Id. ¶ 23). One of Plaintiff's "A" grades was the result of an additional assignment given by a professor outside of the semester by which she could improve her grade from a "B" to an "A." (Id. ¶ 27).

An apparent requirement of Rutgers GSAPP is completion of a series of practicums, which are supervised work assignments in a clinical setting. (Id. ¶ 26). For example, given that Plaintiff was an applied psychology student, her practicums included work at the New Brunswick Public

Schools, the Douglass Developmental Disabilities Center ("DDDC"), and the Highland Park Teen Center ("HPTC"). (Id. ¶¶ 29, 35, 46). Plaintiff's first three semesters of such practicums resulted in passing grades, but in her second semester her evaluation indicated that she needed to work on her organizational skills. (Id. ¶¶ 27-33).

Plaintiff's trouble began in fall 2010, when she commenced a practicum at the Douglass Developmental Disabilities Center, one of the Rutgers Defendants. (Id. ¶ 35). In late September, Plaintiff's supervisor Defendant La Rue told Plaintiff that four DDDC staff members had approached him claiming that Plaintiff asked questions at inappropriate times and required additional direction regarding her role at DDDC. (Id. ¶ 36). Plaintiff claims that these difficulties are symptomatic of her alleged disability. (Id.)

In early November, Plaintiff emailed La Rue to ask whether La Rue and two other teachers could meet with her to discuss a project they were collaborating on. (Id. ¶ 37). La Rue replied that the two other teachers would not attend because they were busy. (Id.) Plaintiff followed up the next day, asserting to La Rue that a meeting was necessary because "there was miscommunication and confusion" about some of the treatment analyses concerning a student. (Id.) That meeting did not occur. (Id.) Plaintiff avers in her complaint that the confusion and miscommunication was a limitation caused by her disabilities. (Id.)

The next day, La Rue emailed Plaintiff materials to use while drafting a report, which La Rue requested be completed by November 17, 2010. (Id. ¶ 38). Plaintiff requested an extension, which was denied. (Id.). When Plaintiff turned in her report, she asked for more training regarding how to calculate and interpret the data. La Rue did not give Plaintiff instruction, but instead made edits to the report. (Id. ¶ 39).

In December 2010, La Rue wrote what Plaintiff alleges was a positive report of Plaintiff's

3

performance at DDDC. (Id. ¶ 40). Nonetheless, Defendant Forman and a non-party Professor Haboush informed Plaintiff in January 2011 that Plaintiff had received an incomplete grade based on La Rue's report. (Id. ¶ 40). Later that same month, Plaintiff had a meeting with Defendant Harris in which Harris told Plaintiff that she did not think that Plaintiff could be provided with a practicum appointment for the following year because she "suspect[s] but doesn't know for sure that [Plaintiff has] a learning disability." (Id. ¶ 42). Over the next week, Plaintiff had email communication with Defendant Harris. (Id. ¶ 43). Harris informed Plaintiff that she would not be offered a position at the DDDC practicum because Plaintiff was not able to recognize her difficulties at the DDDC. (Id.)

Thereafter, Plaintiff again met with Defendant Forman and Haboush regarding Plaintiff's performance at the DDDC practicum. (Id. ¶ 44). During the meeting, Haboush told Plaintiff that Haboush would change Plaintiff's DDDC practicum grade from an incomplete to a pass, depending on Plaintiff's performance during the spring 2011 semester. (Id.)

Plaintiff subsequently returned to DDDC for that spring semester. (Id. ¶ 45). Plaintiff alleges that with the assistance of hands-on training from teacher Maria Melillo and Defendant Sloman she was able to perform adequately. (Id.) However, once Melillo stopped providing hands on training and Defendant Sloman's hands on training became less frequent, Plaintiff avers that her performance weakened. (Id. ¶¶ 45-46). Plaintiff also requested one on one training from Defendant La Rue, which was denied because La Rue did not have enough time to train Plaintiff. (Id. ¶ 48).

On March 14, 2011, Plaintiff began an additional practicum at HPTC, which is operated by Defendant Highland Park Board of Education. (Id. ¶ 46). On May 6, 2011 she was dismissed from HPTC because of alleged miscommunications with students' parents about what transpired

4

during Plaintiff's counselling sessions with them. (Id. ¶ 49). Plaintiff spoke to Haboush by telephone that same day, and Plaintiff wrote a letter to the GSAPP faculty "explaining Plaintiff's requests for reasonable accommodations and how Plaintiff's disabilities had affected Plaintiff's practicum." (Id. ¶¶ 50-51).

Plaintiff's academic standing with the school was then in doubt. She was terminated from the DDDC by Defendant Sloman on May 13, 2011. (Id. ¶ 52) On May 16, 2011 Defendant Forman advised Plaintiff that Plaintiff could not take a required examination in June 2011. (Id. ¶ 53). On June 15, 2011 Plaintiff was told that she should not be providing care to clients due to the fact that her academic standing was currently under consideration. (Id. ¶ 59). After an opportunity to meet with a GSAPP sub-committee, Plaintiff was dismissed from the program. (Id. ¶¶ 58, 61). Plaintiff's various attempts to appeal the dismissal were denied. (Id. ¶¶ 65-81). Plaintiff claims that she has been unable to gain admission to other graduate programs in school psychology because Defendants have refused to provide the references Plaintiff requires for these other programs. (Id. ¶ 82).

## II.   LEGAL STANDARD

For a complaint to survive dismissal pursuant to Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Furthermore, "[a] pleading that offers labels and conclusions or a

formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal citations and quotations omitted). Accordingly, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

### III. **DISCUSSION**

Plaintiff brought six claims in this case, but has withdrawn her claims under Section 504 of the Rehabilitation Act ("RA") and Title II of the Americans with Disabilities Act ("ADA") against the individual Defendants. (Pl. Opp. p. 15). Plaintiff's remaining claims are: (1) violations of Section 504 of the Rehabilitation Act and Title II of the ADA against Rutgers, Rutgers GSAPP; the Highland Park Board of Education; and DDDC (the "Institutional Defendants"); (2) violations of the New Jersey Law Against Discrimination ("NJLAD") against all defendants; (3) violations of the New Jersey Developmentally Disabled Rights Act ("DDRA") against the Institutional Defendants; (4) breach of the covenant of good faith and fair dealing against Rutgers and Rutgers GSAPP; and (5) common-law conversion against Rutgers and Rutgers GSAPP. The Court will address each in turn.

#### A.   **Plaintiff's RA, ADA And NJLAD Claims**

With limited exceptions, the same standards apply to both RA and ADA claims. CG v. Pa. Dept. of Educ., 734 F.3d 229, 235 (3d Cir. 2013). In order to state a claim under both Section 504 of the RA and Title II of the ADA,[3] a plaintiff must allege facts showing that plaintiff "(1) has a

---

[3] ADA Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

6

disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of her disability." Chambers v. Sch. Dist. Of Phila. Bd. Of Educ., 587 F.3d 176, 189 (3d Cir. 2009). Prong three of the RA and ADA claims differ in that the RA requires the disability to be the sole cause of denial of benefits or discrimination and the ADA requires only that the disability be the "but for" cause of the denial of benefits or discrimination. New Directions Treatment Serv. v. City Of Reading, 490 F.3d 293, 300-01 n.4 (3d Cir. 2007). As for the NJLAD, New Jersey courts apply federal standards to its provisions. Mucci v. Rutgers, No. 08-4806, 2011 WL 831967, at *21 (D.N.J. Mar. 3, 2011) ("New Jersey courts therefore apply the standards developed under the ADA when analyzing NJLAD claims"); see also, Lasky v. Moorstown Tp., 42 A.3d 212, 216-17 (N.J. Super. App. Div. 2012) (applying ADA Title II standards to NJLAD discrimination claims).[4]

It is not contested that Plaintiff has a disability for the purposes of this Motion. The Rutgers Defendants argue that (1) Plaintiff has not alleged that she is "otherwise qualified" for the program and (2) Plaintiff has not alleged that she was discriminated against because of her disability. (Def. Rep. 2-3).

---

programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

RA section 504 provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" 29 U.S.C. § 794. It is uncontested that Rutgers receives federal financial assistance.

[4] The NJLAD provides that "[a]ll persons shall have the opportunity . . . to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation" without discrimination on the basis of disability." N.J.S.A. 10:5-4. Rutgers is a place of public accommodation. N.J.S.A. 10:5-5(l).

### 1. Whether Plaintiff Is "Otherwise Qualified"

The Rutgers Defendants contend that Plaintiff has not pled that she is otherwise qualified for the program because she has not identified a specific accommodation that would result in acceptable performance. (Def. Br. 5). They argue that this is particularly so in light of the accommodations Plaintiff received that did not result in acceptable academic performance. (Def. Br. 8). The Court disagrees. ADA Section 12131(2) states that someone is "otherwise qualified" for a program if they meet the essential eligibility requirements of the program "with or without reasonable modifications" to the program. In other words, a plaintiff would need to be able to meet the program's requirements "in spite of her handicap." Southeastern Cmty. Coll. v. Davis, 442 U.S. 397, 406 (1979). However, to the extent that Plaintiff alleges that she was unable to pass her courses because of a failure to provide reasonable accommodations, the Rutgers Defendants are correct that Plaintiff bears "the burden of proving that a reasonable accommodation existed that would enable her to meet the requirements" of the program. Millington v. Temple Univ. Sch. of Dentistry, 261 Fed. App'x 363, 366 (3d Cir. 2008).

Plaintiff pled that she gained admission to the program without disclosing her disability. (Compl. ¶ 21). Plaintiff alleges that she performed well in the program prior to her practicum at DDDC: she pleads that she obtained high marks in her coursework (Compl. ¶¶ 23-25), that she was able to obtain passing marks in two prior practicums (Compl. ¶¶ 28-31), and that she took and passed the 2010 General Comprehensive Examination (Compl. ¶ 34). With respect to accommodations relevant to her practicum work Plaintiff further alleges that she was able to obtain "positive feedback" when she was provided with hands-on training sessions. (Compl. ¶ 45). Taken together, and drawing all inferences in favor of Plaintiff, Plaintiff's complaint has alleged facts plausibly supporting that she could meet the essential eligibility requirements of the program with

reasonable modifications, namely the hands on training sessions.

Defendant further argues that the Court should recognize and defer to the school in finding that Plaintiff is not academically qualified for the program. (Def. Br. 12-13). The Court is mindful of the deference given to academic decision making in the ADA context. Millington, 261 Fed. App'x at 367 (university "decisions are viewed with the deference ordinarily afforded educational institutions for decisions relating to their academic standards"). However, this deference does not override this Court's duty to draw all reasonable inferences in favor of the non-moving party at the motion to dismiss stage. The Court is unpersuaded that the Complaint's factual allegations support academic deference, and will not defer to the Rutgers Defendants absent a fuller record. See Hershman v. Muhlenberg Coll., No. 13-7639, 2014 WL 1661210, *3 n.4 (E.D. Pa. Apr. 24, 2014). Indeed, every appellate case cited by the Rutgers Defendants as extending deference to academic decision making contemplates a full record. Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 217 (1985) (reviewing the district court's decision after a four day bench trial); Davis, 442 U.S. at 401 (reviewing the district court's decision after a bench trial); Bd. of Curators of the Univ. of Mo. v. Horowitz, 435 U.S. 78, 80 (1978) (reviewing the district court's decision after trial); Hankins v. Temple Univ., 829 F.3d 437, 439 (3d Cir. 1987) (reviewing the district court's decision on summary judgment; the court held hearings over several days related to a preliminary injunction); Doe v. New York Univ., 666 F.2d 761, 776 (2d Cir. 1981) (applying educational deference in the context of reviewing the district court's summary judgment determination); McGregor v. La. State Univ. Bd. of Supervisors, 3 F.3d 850, 854 (3d Cir. 1993) (reviewing the district court's decision on summary judgment); Wynne v. Tufts Univ. Sch. of Med., 932 F.2d 19, 20 (1st Cir. 1991) (reviewing the district court's decision on summary judgment).

Only one case cited by the Rutgers Defendants has dismissed a similar ADA claim on the

"otherwise qualified" prong in the initial stages due to academic deference. This case is distinguishable. In Manickavasagar v. VCU, 667 F. Supp. 2d 635 (E.D. Va. 2009), the plaintiff-applicant had not been admitted to the defendant school, and so had not had an opportunity to demonstrate any capability in the program. That court found Manickavasgar's averments indicating his scores fell within a range "acceptable" to admission was insufficient to state a claim, considering other averments indicating that his scores were below the median, that only 50% of interviewed applicants would be admitted, and that his interview went poorly. Id. at 645. Here, drawing all inferences in favor of plaintiff, the Court finds that the allegations speaking to the applicant's admission to the program and early success in both the classroom and practice settings—both absent in Manickavasgar—states a claim that she is "otherwise qualified."

### 2. Whether Plaintiff Has Pled Discrimination

In order to satisfy the third prong of the inquiry, Plaintiff must have alleged that she was denied the benefits of the program or was otherwise subject to discrimination because of her disability. Chambers, 587 F.3d at 189. The Rutgers Defendants argue that the complaint does not properly allege that her alleged disability played a part in her dismissal from the program. To the contrary, Plaintiff clearly alleged that a professor told her that she would not be placed into a practicum because of her learning disability. (Compl. ¶ 42). Drawing all reasonable inferences for plaintiff, this facial statement is enough at the pleading stage to show that Plaintiff was "subject to discrimination because of her disability." Chambers, 587 F.3d at 189.

The Rutgers Defendants also argue that Plaintiff has not set forth a *prima facie* case for failure to provide reasonable accommodations. Citing ADA Title I cases and regulations, they contend that in order to state a reasonable accommodations claim, Plaintiff was required to make clear to her professors that each request was related to her disability. (Def. Br. pp. 19-20 (citing

10

Colwell v. Rite Aid Corp., 602 F.3d 495, 506 (3d Cir. 2010)) ("[E]ither by direct communication or other appropriate means, the employee must make clear that [he/she] wants assistance for his or her disability").

Assuming, without deciding, that the Court should apply standards developed in the Title I employment context to the instant case, the Court finds that Plaintiff has pled facts which plausibly demonstrate that her professors knew her requests were related to her disability. Plaintiff states that she informed the school office of disability services of her disabilities. (Compl. ¶ 24). Plaintiff has pled that her disability seemed apparent to at least defendant Harris. (Id. ¶¶ 42-43). And Plaintiff's alleges that her requests were related to these disabilities. (See, e.g., Compl. ¶¶ 17-18, 37, 39, 45). Taken together, these facts are enough to plausibly demonstrate that the Rutgers Defendants were aware that Plaintiff's requests were for assistance with her disability. Accordingly, the Court will deny the Rutgers Defendants' motion to dismiss Plaintiff's disability claims.

### B. Plaintiff's DDRA Claim

The Rutgers Defendants argue that Plaintiff's DDRA claim is fatal because she does not allege that she has a developmental disability as defined by the statute. Plaintiff submitted no opposition to this point. The Court agrees with the Rutgers Defendants. Plaintiff has not alleged a severe, chronic disability that limits three or more of major life activities such as "self-care, receptive and expressive language, learning, mobility, self-direction and capacity for independent living or economic self-sufficiency." N.J.S.A. 30:6D-3(a)(4). Accordingly, Plaintiff's DDRA claim will be dismissed without prejudice.

### C. Plaintiff's Breach Of The Covenant Of Good Faith And Fair Dealing Claim

In New Jersey, "[i]n the absence of a contract, there can be no breach of an implied

11

covenant of good faith and fair dealing." Wade v. Kesller Inst., 778 A.2d 580, 584 (N.J. Super. App. Div. 2001). Plaintiff has not alleged that she is a party to a contract with any of the Institutional Defendants, and New Jersey courts have declined to extend contract principles to the university context. Mittra v. Univ. of Med. & Dentistry of N.J., 719 A.2d 693, 697-98 (N.J. Super. App. Div. 1998) (limiting review in an academic dismissal case to whether there was a 'fair procedure'). Accordingly, the instant claim will be dismissed without prejudice.

### D. Plaintiff's Conversion Claim

Under New Jersey law, conversion is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Bondi v. Citigroup, Inc., 32 A.3d 1158, 1190 (N.J. Super. App. Div. 2011). Plaintiff claims that the Institutional Defendants have converted her tuition money. (Compl. ¶¶ 104-105). In the case of an action for conversion of money, "the injured party must establish that the tortfeasor exercised dominion over its money and repudiated the superior rights of the owner." Id. Here, Plaintiff paid tuition and fees in return for instruction. Thus, Plaintiff has not plausibly pled that she has superior rights to the money, or that it actually belongs to her. Accordingly, the instant claim will be dismissed without prejudice.

### IV. CONCLUSION

For the forgoing reasons, the Rutgers Defendants' motion to dismiss is granted in part and denied in part. Plaintiff will be given thirty days to amend her complaint to address any deficiencies addressed in this opinion. An appropriate order accompanies this opinion.

DATED: June 10, 2014

_____
**CLAIRE C. CECCHI, U.S.D.J.**

12